1819.

Pannell
vs
M'Mechen

JUNE.

PANNELL vs. M'MECHEN.

J E D made a promissory note, payable to W D, or order, who endorsed it to W M, or order, who endorsed it to E P, or order. J E D and W D entered into a deed of composition with their creditors, (among whom was E P.) by which J E D and W D, having conveyed all their estate to certain trustees, among whom was W M, were discharged from all debts and sums of money due or owing to the said creditors, with a proviso, "that the said release shall not operate in favour of, or be construed to release any person or persons who may be bound for the said J E D and W D, or either of them, or who may have endorsed any notes or note drawn or endorsed by the said J E D or W D, or either of them." Due and legal notice having been given of the nonpayment of the above note, E P brought an action thereon against W M as one of the endorsors—*Held,* that the action could be sustained, and that the release did not discharge the defendant from his responsibility as endorsor.

APPEAL from *Baltimore* County Court. *Assumpsit* on a promissory note, by the endorsee, (the appellant,) against the last endorsor, (the appellee.) The declaration contained two counts, one on the note, and one for money lent and advanced. The facts as agreed upon were these: The action is brought upon a promissory note drawn on the 27th of April 1813, by *John E. Dorsey*, for $3000, payable 90 days after date to *Walter Dorsey*, or order, by him endorsed to the defendant or order, and by the defendant endorsed to the plaintiff or order. Across the face of the note was written in red ink, "This note, held by *Edward Pannell* at the time of signing the deed of trust from *Wm. H. Dorsey* and others, to *Henry Payson* and others, forms part of the lien of $64,500 to *W. M'Mechen*, mentioned in said deed.         , John E. Dorsey."

All the signatures to the note were admitted. Due and legal notice of its nonpayment by the drawer was given to the several endorsors; and the plaintiff was the holder of the note at the time it became due. The above mentioned writing in red ink was made and signed by *John E. Dorsey*, and was so made and signed by him in pursuance and in execution of a power vested in him by the deed hereinafter mentioned. A deed of trust was executed by *William H. Dorsey*, and others, to *Henry Payson*, and others, on the 23d of June 1813, a copy of which was annexed, and admitted to be a true and correct copy, and that the signature and seal of *Edward Pannell*, the plaintiff, to the said deed, was his signature, and that he had duly executed the deed within the 50 days prescribed therein. No part of the sum specified in the note, and for the recovery of which this action was brought, had been paid or satisfied to the plaintiff. The question on this statement of facts was, whether or not the plaintiff was entitled to recover? The deed referred to was dated the 23d of June 1813, and was between *William H. Dorsey, John E. Dorsey* and *Walter Dorsey*, of the first part, *Robert Gilmor*, &c. of the second part, *Henry Payson, William M'Mechen*, &c. of the third part, "and the creditors of the said *William H. Dorsey*,

*John E. Dorsey* and *Walter Dorsey*, who shall sign and seal these presents within fifty days next ensuing the day of the date hereof, and also such other creditors of the said *William H. Dorsey* as are herein after specially provided for, (without their signing and sealing these presents,) of the fourth or other part." The deed then states, that sundry tracts of land, &c. therein after mentioned, had been mortgaged to *Robert Gilmor*, &c. That *William H. Dorsey*, &c. were indebted to sundry persons in divers sums of money, which they were incapable of discharging otherwise than in the manner therein after mentioned. That "in order to discharge the said several debts, they have proposed and agreed to convey, &c. unto the parties of the third part, and the survivors, &c. for the benefit of the parties thereto of the second part, and of such of the said parties of the third part as are creditors, and of the rest of the creditors of the said *William H. Dorsey*, &c. in the manner and under and subject to the powers, provisos and conditions, hereinafter expressed and declared, all and singular the real and personal estate hereinafter described or mentioned." The said *William H. Dorsey*, &c. pursuant to the said agreement, and in consideration of the said sums of money so due and owing from them, and in consideration of the sum of one dollar, &c. granted, &c. to *Henry Payson*, &c. sundry tracts of land, &c. To have and to hold the said lands, &c. unto the said *Henry Payson*, &c. and the survivors, &c. upon certain trusts, &c. That certain funds be applied, in the first place, to discharge the debt due to *Robert Gilmor*, &c. In the second place one half, &c. to be applied to the payment of $19,000 due and owing to *J. E. Dorsey* for borrowed money, and to extinguish the interest on $64,400, and any endorsements or engagements which shall be admitted by *John E. Dorsey* within 50 days, over and above that sum, being the admitted lien of the said *William M'Mechen* on the estate and property, &c. After stating sundry other things it proceeds as follows: "And such of the parties hereto of the third part, as are creditors, and all the parties hereto of the fourth part whose names are hereunto subscribed and seals affixed, do hereby respectively signify and declare their assent to the terms and conditions of this deed, and their approbation of the provisions hereby made for the satisfaction and discharge of their several and respective debts and claims, and in consideration thereof they do severally and respectively release, acquit, and by these presents for ever discharge, the said *William H. Dorsey*, *John E. Dorsey* and *Walter Dorsey*, their heirs, &c. and each and every of them, and from the payment of the debts and sums of money due or owing to them, the said creditors, from or by the said *William H. Dorsey*, *John E. Dorsey* and *Walter Dorsey*, jointly, or from or by any or either of them jointly or individually; and also from all other claims and demands whatever, from the beginning of the world to the date of these presents. Provided that the said release shall not operate

in favour of, or be construed *to release any persons or person who may be bound for the said William H. Dorsey, John E. Dorsey and Walter Dorsey, or any or either of them, or who may have endorsed any notes or note drawn or endorsed by the said William H. Dorsey, John E. Dorsey and Walter Dorsey, or any or either of them.*" This deed was signed, sealed and acknowledged, by the *Dorseys* and *Gilmor*, and by all the parties named therein, and among others by the plaintiff. On these facts the county court gave judgment for the defendant, and the plaintiff appealed to this court.

The cause was argued before EARLE, JOHNSON, and MARTIN, J.

*Winder* and *Murray*, for the Appellant. The defence relied on by the defendant below was, that he and the plaintiff signed a deed of trust, by which the *Dorseys* were released, saving the responsibility of all other persons; and the question is, whether the defendant is discharged from his liability upon the note in a suit under this release of the plaintiff, notwithstanding the proviso in the deed? 1. Is it not peculiarly the province of the law of merchants, that those acts which would release as to ordinary contracts do not apply to promissory notes? 2. The release is such as would not discharge ordinary contracts. It is said in 5 *Bac. Ab.* tit. *Release,* (G) 702, "if two or more are jointly and severally bound in a bond, a release to one discharges the others; and in such case the joint remedy being gone, the several is so likewise." Cites *Ex parte Slater,* 6 *Ves.* 146. Here there was no proviso that the others should not be released. So "also, if two are bound in an obligation, and the obligee releases to one of them, proviso that the other shall not take advantage of it; this proviso is void." Cites *Everard vs. Herne, Litt. Rep.* 190, where the obligors were *jointly* bound. But the drawer and endorsor of a promissory note are not jointly bound, they are bound severally. When jointly and severally bound, will the release of one, with a proviso, release the other? To show that it would not, they cited *Shep. Touchs.* 126. 3 *Com. Dig.* tit. *Condition,* (D. 4) 93, (D. 7) 95, 96. *Roe vs. Galliers,* 2 *T. R.* 133. 2 *Blk. Com.* 186. *Hayling vs. Mullhall,* 2 *W. Blk. Rep.* 1235. *Smith vs. Knox,* 3 *Esp. Rep.* 47. *English vs. Darley, Ibid* 49. *Mallit vs. Thompson,* 5 *Esp. Rep.* 178. *Clark vs. Devlin.* 3 *Bos. & Pull.* 363. *Chitty on Bills,* 147, 181, 198, 172, 173, 218, 219, 229, 166 to 174, 212 to 214, 232, 215, 230. *Gould vs. Robson,* 8 *East.* 576. *Rogers vs. Stephens,* 2 *T. R.* 713. *Goodall vs. Dolley,* 1 *T. R.* 712. *Bull. N. P.* 276. *Harding vs. Crethorn,* 1 *Esp. Rep.* 58. *Bowley vs. Stoddard,* 7 *Johns. Rep.* 207. *Sargent v. Appleton,* 6 *Mass. Rep.* 85. *Call vs. Hagger, et al.* 8 *Mass. Rep.* 423. *Marriott vs. Hampton,* 2 *Esp. Rep.* 546. *Brown vs. M'Kennally,* 1 *Esp. Rep.* 279. 2 *Kaimes,* 121. *Chitty on*

*Bills* 91, 86, 101, 118. *Ballingalls vs. Gloster, 3 East,* 481; and 5 *Bac. Ab.* tit. *Release,* 608.

*Pinkney,* for the Appellee. There are two questions in this case—1. Whether the release, notwithstanding the proviso, and the fact that the defendant is a party to the deed, is not a flat bar? 2. Whether it is consistent with the intent of the trust deed, that the plaintiff can resort to the endorsor? As to the legal effect of the release at common law he cited 5 *Bac. Ab.* tit. *Release,* (G) 702. 18 *Vin. Ab.* tit. *Release,* 352, and 5 *Bac. Ab.* tit. *Obligation,* 157, 166, 167. He also referred to *Williams vs. Hodgson,* 2 *Harr. & Johns.* 474. *M'Fadden vs. Parker,* 4 *Dall. Rep.* 275. *Claxton vs. Swift,* 2 *Show.* 481. *Everard vs. Herne, Litt. Rep.* 191. *Cooke vs. Jenner, Hob.* 66. *Parker vs. Lawrence, Ibid* 70. *Norton's* case, *Cro. Eliz.* 30. 1 *Esp. Dig.* 416. *Chitty on Bills,* 272, 274. *M'Donald vs. Bovington,* 4 *T. R.* 825, and *Nadin vs. Battie,* 5 *East,* 147. If the holder of a bond or note gives time to the principal, the security is released; by time is understood an extension of credit, until the end of which time, the holder by some act of his own has restrained his power of bringing suit. The reason why a security is released is that his risk is thereby increased, the contract is altered, the time is to his detriment. If he consents to this credit he has no equity to be released. But if the holder extinguishes his claim against the principal, so that he can never again sue him, the security is released, although he may give his consent not to be released, because the original contract is at an end; as for instance payment by the principal, the security is released, even if it were covenanted to the contrary.

JOHNSON, J. delivered the opinion of the court. The present is an appeal from a judgment obtained by the appellee on a suit brought against him by the appellant, decided on a case stated. [After stating the facts he proceeded.]

On those facts the plaintiff ought and would have recovered a judgment. The defence relied on is that the plaintiff, the endorsee and holder of the note, released the drawer and the first endorsor, and thereby discharged the last endorsor.

In forming an opinion in this cause, the nature of the release in question, and the manner and terms on which it was obtained, demand particular attention. The drawer, and the first endorsor, finding themselves in embarrassed circumstances, unable to meet their engagements as they became due, propose to compound with their creditors; and on the 23d of June 1813, executed a deed of trust to certain trustees, of whom the defendant was one, of a large real and personal estate, to be by them applied towards the payment of their debts, in the order directed by the deed; thereby securing, or attempting to secure, to

Pannell
vs
M'Mechen

the defendant in this cause, the payment of the notes in question, on the terms, that such of their creditors as should come in and assent by becoming parties to the deed, should participate and have an interest in the property so conveyed. The deed itself contains a clause by which the drawer and the first endorsor are released, on the express terms that such release should not extend to any other person, but that such person should continue responsible as if the deed had not been executed. To those terms the plaintiff and defendant assented, and signed their names, and set their seals to the instrument.

It is on that release, so obtained, and on such express stipulations, that the defendant, against the express terms of the instrument itself, relies for his exoneration.

The first question which arises is, ought a release on principle so obtained, with the consent of all parties interested, specifying its extent and object, to be extended beyond the stipulated object?

The second is, will the law, against the express agreement of all the parties interested, enlarge the release so as to produce a result different from the express stipulations; in other words, to give to the last endorsor the benefit of the release *against his express agreement?*

The object of the deed of trust was to give to the creditors of the drawer and first endorsor all the benefit they could derive from the property so conveyed—as between them this arrangement was of considerable moment; without it the second endorsor would have had nothing to rely on, but the individual responsibility of the drawer and first endorsor—that individual responsibility he was willing to release, on the substitution of the property conveyed on the terms and on the conditions prescribed by the deed.

It may be asked, why must a release, to which all persons interested are parties, have an effect different from that they agreed on? Will it violate any well known rule of law, or is it inconsistent with any principle of justice or propriety? So far from the latter being the case, the reverse appears to follow; for as the original debtors were bound to pay the whole, and as they could not, but were willing to transfer, on terms acceptable to all interested, what they had, for the easement of those who were bound for them, the refusal of him then holding the obligation to accede to such terms, would present grounds of complaint; not such, it is true, as would exonerate those who were bound for them. But although it would not free them, yet it is evident such refusal, in its result, must draw more from the funds of the last endorsor than otherwise would have been the case. With the assent of the holder of the note, a part, if not the whole, might have been raised from the funds of the drawer and first endorsor. Those funds could not be obtained except on their discharge, that discharge the second endorsor was willing to assent to, remaining himself responsible. But, if such discharges can-

1819.
Pannell
vs
McMechen

not be obtained without releasing the last endorsor also, then no accommodation for his benefit, requiring the assent of the holder, can ever be obtained.

The question then is, must the release of the drawer and first endorsor, by virtue of any fixed principle of law, release also the next endorsor, when he is a party to the instrument containing the release, expressly declaring such should not be the effect?

In a case of this description, when a person claims the benefit of a release against its terms, to which he has assented, it might be expected some decisions in support of the position would have been produced—none such has been cited.

The cases relied on are, that a release given to a joint obligor, or to *joint* and *several* obligors, will release the other, and that a release to one trespasser, will release the co trespasser.

As to the case of the joint obligor released, discharging the other, the principle of the decision seems to be, that unless it extended to all, the person to whom the release was given could obtain no benefit by it; and therefore, that a release given to such an obligor, should extend to the co-obligor, although the release on its facts contained a proviso to the contrary.

The only case which has been produced of such a limited or restricted release is *Everard vs. Herne*, in *Littleton's Reports*, 190; but the counsel differ in opinion as to the real state of that case. The one supposes the bond to have been joint only, the other joint and several. The reason why it is conjectured to have been joint and several is that the suit was brought against one. There is nothing in the case from which it is to be inferred the bond was several as well as joint, except only that one was sued. Nor is it deemed of any importance whether joint, or joint and several. But supposing the case in *Littleton* to have been on a joint and several bond, yet it seems not to meet the case before the court; for nothing is disclosed by that case of the *assent* of the co-obligor to such release producing such an effect. It is presumed that the release in that case was on a joint bond, for if the bond was joint and several, the obligor might have sued one, omitting to sue him he wished to benefit—a release therefore was not necessary, unless it was intended, as between the obligors themselves, to change the co-responsibility, and cast the whole burthen on him, whom the obligor elected to remain liable. But the case in *Littleton* is the only authority cited with a restrictive release.

All the other cases of releases are where the releases are general, *importing satisfaction*; and the debt, once *satisfied*, whether joint, or joint and several, the demand of the obligee was at an end, and of course he could recover from no person—differing materially from a release shewing by itself the claim still existed—differing materially from a case, where, by the facts as agreed on by the parties,

it is expressly admitted that *no part* of the *money* has been paid or *satisfied.*

The cases most apposite to the cause before the court are where the holder of a note, or bill, gives time, which would exonerate the drawer or endorsor; but which *fact of giving time* is deprived of that effect in consequence of the *assent* of the person who would have been bound, if such time had not been given. The *time given* is the ground of *discharge or exoneration*, the *assent deprives* the time so given of such an operation.

Therefore, without saying that a release to a person bound jointly and severally, with a proviso attempting to limits its effect, can operate to the discharge of the co-obligors not included in the release, the court are clearly of the opinion, that the release given in this case cannot discharge the defendant from his responsibility as endorsor of the note on which the suit is brought. The judgment of the court is therefore reversed.

JUDGMENT REVERSED.